**UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL** | ) | |
| **CASUALTY INSURANCE COMPANY,** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **ACTION NUMBER** |
| | ) | **1:05cv951-T** |
| **v.** | ) | |
| | ) | |
| **G&S CUSTOM COVERS, INC.;** | ) | |
| **KYM INDUSTRIES, INC.,** | ) | |
| **AND DENNIS WILSON,** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT
THEREOF**

_____COMES NOW the Plaintiff, Pennsylvania National Mutual Casualty Insurance Company

(hereinafter referred to as "Penn National"), by and through the undersigned counsel of record, and

hereby moves this Honorable Court, pursuant to Rule 56, *Fed. R. Civ. P.*, to grant a summary

judgment in it's favor as to all claims in the above referenced matter on the basis there is no genuine

dispute as to any material fact, and Penn National is entitled to a judgment as a matter of law.  In

support of its motion, Penn Nations submits the following brief:

**NARRATIVE SUMMARY OF UNDISPUTED FACTS**

On or about October 14, 2005, Penn National filed a Complaint for Declaratory Judgment

with this court in an effort to have the court determine whether Penn National was required to pay

default judgments rendered against it's insureds, G&S Custom Covers, Inc. and KYM Industries

Inc., as the result of a state lawsuit filed in the Circuit Court of Houston County by Dennis Wilson.

(See Amended Complaint, generally).  Penn National issued an insurance policy providing

commercial general liability coverage to G&S Custom Covers, Inc. with effective dates of 11/23/99 to 11/23/00, bearing policy number CL9 0082936.  The named insured under said policy was changed by KYM Industries, Inc., on or about February 28, 2000.  (See Amended Complaint and attachments).  This policy was renewed under the same policy number for the policy period of 11/23/00 through 11/23/01.  The named insured under said policy was KYM Industries, Inc.  The above-referenced policy was renewed for the policy period of 11/23/01 - 11/23/02 with the named insured being KYM (See Amended Complaint and attachments).  Said renewal policy contains the same general liability coverage forms as the original policy.  The Penn National policy issued to KYM was renewed for the policy period of 11/23/02 through 11/23/03.  Said renewal policy contained a new commercial general liability coverage form, although the coverages provided under said form were virtually identical to those provided under the prior years' policies.  (See Amended Complaint and attachments).  The above-referenced policy was renewed by Penn National insuring KYM for the policy periods of 11/23/03 through 11/23/04 and 11/23/04 through 11/23/05.  The coverage forms of both policies, from a commercial general liability standpoint, are identical. .

All of the above-referenced policies issued by Penn National to G&S and KYM contained Endorsement CG 21 47 10 93 entitled Employment-Related Practices Exclusion.  Said Endorsement excluded any claims for bodily injury arising out of the termination of a person's employment, or employment-related practices, policies, acts, or omissions.  (See Amended Complaint and attachments).  The authenticity of these policies as submitted by Plaintiff have been confirmed by Defendant KYM in its Answers to our Requests for Admissions (Attached hereto as Exhibit "A").

Dennis Wilson, a defendant herein, filed a lawsuit in the Circuit Court of Houston County, Alabama, on December 10, 2004, naming as defendants G&S Custom Cover, Inc. and KYM Industries, Inc. Said Complaint was amended on March 29, 2005. (See Amended Complaint and attachments). It is alleged that the plaintiff was an employee of G&S on November 18, 1999, at which time he sustained a job-related injury. Id.. Subsequently on December 20, 1999, it is alleged the plaintiff, Defendant Wilson, was terminated by G&S as a result of his instituting a workman's compensation claim. Subsequently, Dennis filed suits for workman's compensation benefits and retaliatory discharge against G&S. Id..

Dennis Wilson obtained service upon G&S in the retaliatory discharge suit on or about September 28, 2000, and obtained a default judgment against said defendant on April 27, 2001, in the amount of $202,820, plus court costs. Id. It is further alleged that Wilson filed a separate Complaint against G&S for workman's compensation benefits on November 19, 2001, properly served the defendant and obtained a default judgment against G&S on May 20, 2002, for damages in the amount of $11,970.44, plus costs. Id. It is the collection of these default judgments against G&S and/or KYM, together with other compensatory and punitive damages, which form the basis of the claims asserted by Dennis Wilson in the presently pending lawsuit in the Circuit Court of Houston County, Alabama. (See Amended Complaint and attachments previously filed). (Also see Dennis Wilson's Response to Plaintiff's Request for Admission, attached hereto as Exhibit "B").

Defendant Wilson alleges in his Complaint that G&S intentionally fraudulently transferred its assets to KYM in order to hinder, defraud, or delay the ability of Wilson to collect the judgments he obtained against G&S. It is alternatively alleged in the original Complaint that KYM is really a continuation of the business known as G&S and any transfer of assets between said entities was

accomplished for the purposes of defrauding the plaintiff and preventing Wilson's ability to satisfy the judgments he obtained out of the assets of G&S or KYM.  The Amended Complaint filed by Dennis Wilson reiterates the same claims and adds Count 3 which seeks to pierce the corporate veil of G&S and/or KYM in order to collect upon the judgments awarded in the two lawsuits filed by Wilson in the Circuit Court of Houston County, Alabama.(See Amended Complaint and attachments).  Penn National is currently defending KYM in this lawsuit under a Reservation of Rights.  (See  Exhibit A)(See also Amended Complaint and attachments)

<u>**STANDARD FOR REVIEW**</u>

        The purpose of a motion for summary judgment is to challenge the contention that a case presents a genuine issue of material fact necessitating a trial. *Matsushita Elec. Indust. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56 (c). The moving party can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324, 106 S.Ct. at 2552-53.  Once the moving party has met its burden, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine

4

issue for trial.' " *Id.* at 324, 106 S.Ct at 2553. To avoid summary judgment, the non-moving party

"must do more than show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. On the other hand, the evidence of the non-moving

party must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty*

*Lobby,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).  After the non-moving

party has responded to the motion for summary judgment, the court must grant summary judgment

if "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

of law." *Id.* quoting Fed.R.Civ.P. 56(c).

## ARGUMENT

1.    **THE CAUSES OF ACTION AND DAMAGES CLAIMED BY DEFENDANT WILSON IN THE UNDERLYING ACTION ARE NOT COVERED UNDER THE LIABILITY POLICIES ISSUED BY PENN NATIONAL**

Form CG 00 01, Section I of the subject insurance policy states thus:

"COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1.  Insuring Agreement
    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or suit that may result...
    b.    This insurance applies to bodily injury and property damage only if:
        (1)    the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and
        (2)    the bodily injury or property damage occurs during the policy period."
2. Exclusions
    "This insurance does not apply to:
        a.    Expected or Intended Injury

5

Bodily injury or property damage expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury resulting from the use of reasonable force to protect persons or property

d.    Workers' Compensation and Similar Laws:
      Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.    Employer's Liability
      Bodily Injury to:
      (1)    An employee of the insured arising out of and in the course of:
      (a)    employment by the insured; or
      (b)    performing duties related to the conduct of the insured's business;
      This exclusion applies:

            (1)    Whether the insured may be liable as an employer or in any other capacity; and
            (2)    to any obligation to share damages with or repay someone else who must pay damages because of the injury."

Form CG 21 47 07/98 also includes a "Employment-Related Practices Exclusion". It states:

"A.    The following exclusion is added to Paragraph 2, Exclusions of Section 1

Coverage A - Bodily Injury and Property Damage Liability:

This insurance does not apply to:
"Bodily Injury" to:
(1) A person arising out of any:
      a.    Refusal to employ that person;
      b.    **Termination of that person's employment**; or
      c.    Employment related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person;...

This exclusion applies:
(1)    Whether the insured may be liable as an employer or in any other capacity; and
(2)    to any obligation to share damages with or repay someone else who must pay damages because of the injury"

Further, under the policy, an "occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. (See CG 00 01, Sec. V, 12)

6

A.   **SPECIFIC EXCLUSIONS ENUMERATED IN SUBJECT INSURANCE POLICY RELEASE PENN NATIONAL FROM ITS OBLIGATION TO DEFEND AND INDEMNIFY G&S AND KYM**

The applicable liability policies issued by Penn National to defendants G&S and KYM specifically exclude any obligation of G&S and/or KYM under Alabama's workman's compensation law (See Exclusion 2.d.) and any bodily injury to an employee of the insured arising out of and in the course of employment with the insured. (See Exclusion 2.e.) Furthermore, said policy does not apply to any claims for bodily injury or property damage expected or intended from the standpoint of the insured (See Exclusion 2.a.); and the employment related practices exclusion precludes coverage for any claims by Wilson for damages as a result of his alleged termination of employment or other employment-related practices, policies, acts or omissions by his employer.

A strikingly similar case to the case at bar is that of *State National Insurance Company v. Affordable Homes of Troy, LLC*, 368 F.Supp.2d 1281 (M.D. Ala. 2005). In that case, a commercial general liability insurer sought a Declaratory Judgment that it had no duty to defend or indemnify insureds in an underlying state court action on tort counterclaims asserted by a former employee. Insurer moved for summary judgment and the District Court held that an employment-related practices exclusion was applicable to tort claims against the insureds arising out of their accusations that former employee embezzled funds.

Under Alabama law, an insurer's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured. *Troy*, 368 F.Supp.2d 1281. If the allegations of the injured party's complaint show an accident or "occurrence" which comes within the coverage of the policy, then the insurer is obligated

to defend.  The subject insurance policy in *Troy*, just like the policy in the case at bar, included an "Employment Related Practices" exclusion for bodily injury in the commercial liability insurance policy.  *Id.* (See also, Form CG 21 47 07/98).  The Court held that this exclusion applied to the former employee's claims against insureds for defamation, malicious prosecution and other torts arising out of the insureds' allegedly wrongful actions in accusing employee of embezzlement, as many claims were explicitly enumerated in exclusionary language.  *Id.*

Where an underlying claim for personal injuries based upon the employer/employee relationship is explicitly enumerated within the exclusionary language of a liability policy, subsequent claims, whether sounding in contract or in tort, seeking to enforce the original obligations are likewise excluded from coverage, both as to duty to defend and as to the duty to assume any obligation of payment.  *Id.*  In the case at bar, as in *Troy*, employment related injuries and wrongful termination are specifically excluded in the subject insurance policy.

"An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegation in the complaint giving rise to the action against the insured." *Ajdarodini v. State Auto Mutual Insurance Company,* 628 So.2d 312, 313 (Ala.1993).  "If the allegations of the inured party's complaint show an accident or occurrence which comes within the coverage of the policy the insurer is obligated to defend regardless of the ultimate liability of the insured." *Chandler v. Alabama Municipal Insurance Company,* 585 So.2d 1365, 1367 (Ala.1991). In this case, there is no dispute that the policy was in effect at the time of the actions at issue nor that Defendants G&S and KYM were insured under the policy.  (See Exhibit A).  As such,  the Employment-Related Practices Exclusion in Penn National's insurance policies precludes insurance coverage for the disputed acts alleged in the underlying litigation, i.e., Dennis Wilson's workers

compensation and wrongful termination claims and his seeking to enforce judgments relevant to both.

The exclusion modifies the insurance coverage provided under the subject policy. Specifically, the exclusion amends the employer's liability to exclude from coverage any "bodily injury" related to termination of that person's employment, or employment-related practices, policies, acts or omissions. (See Form CG 21 47 07/98). "Where the underlying claim - claim for personal injuries based upon the employer/employee relationship - is explicitly enumerated within the exclusionary language of the policy, subsequent claims, whether sounding in contract or tort, seeking to enforce the original obligations, are likewise excluded from coverage, both as to duty to defend and as to the duty to assume any obligation of payment." *Carter v. Cincinnati Ins. Co.,* 435 So.2d 42, 45 (Ala.1983). Here, all the acts of KYM and G&S against Wilson arose out of employment-related practices of G&S or KYM. All are immediately germane to Wilson's former employment with G&S. As such, the acts alleged in the underlying action are barred from coverage, as the clear and unequivocal language of the policy warrants preclusion of insurance coverage for the acts alleged in Wilson's Complaint.

**B.    PENN NATIONAL IS NOT OBLIGATED TO DEFEND OR INDEMNIFY G&S OR KYM BECAUSE THE SUBJECT INJURY COMPLAINED OF BY WILSON DOES NOT CONSTITUTE AN OCCURRENCE UNDER THE POLICY**

In *Home Insurance Com. v. Hartford Fire Insurance Company,* 379 F.Supp.2d 1282 (M.D. Ala. 2005), a commercial general liability insurer filed an action against defendant insurers seeking to recover the amount paid to settle a suit brought against the insured in state court. A subsidiary of

one defendant insurer filed a declaratory judgment action seeking a declaration that it had neither a duty to defend nor a duty to indemnify the insured in other litigation brought against the insured by another employee. In granting summary judgment, The District Court held, in relevant part, that the insured's actions giving rise to the state court suit brought by its employee could not constitute "occurrences" as defined in the insured's commercial general liability policies; and even if the insured's allegedly tortious acts against its employee constituted an "occurrence" within the meaning of insured's commercial general liability policies, coverage did not exist because of the intentional act exclusion.

The insurance policies at issue in the instant case provided coverage for claims of "bodily injury." (See Form CG 00 01). Penn National's insurance policies provide that it "will pay those sums which the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies." (See Form CG 00 01). The policies further provide that "this insurance applies to "bodily injury" and "property damages" only if: (1) the bodily injury or property damage is caused by an occurrence that takes place in the coverage territory; and (2) the bodily injury or property damage occurs during the policy period." Id. at ¶ 1.b. Finally, the policies contain an intentional act exclusion. "This insurance does not apply to "bodily injury" or "property damage" expected or intended from the standpoint of the insured." Id. at ¶ 2.a. It is the construction and application of this latter provision which is determinative.

Resolution of the intentional act issue permits the court to determine the Penn National policies provide no coverage to KYM or G&S for Dennis Wilson's claims. The court will look at the entire case, examining all evidence, including the complaint, in the underlying suit. *Home Insurance v. Hartford,* citing *Baker v. Am. Ins. Co. of Newark*, 324 F.2d 748, 750 (4th Cir.1963). To determine

whether Penn National has a duty to defend G&S and KYM against Dennis Wilson's claims, the court looks to the allegations in the complaint against the insured to determine whether facts have been alleged which would provide the insured coverage under the policies. *Auto Owners Insurance Company v. Toole,* 947 F.Supp. 1557 (M.D. Ala. 1996) Citing *Alfa Mutual Ins. Co. v. Morrison*, 613 So.2d 381, 382 (Ala.1993).

The policies define an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (See Amended Complaint and attachments). However, the policies do not define the term "accident." The Supreme Court of Alabama has consistently held that "insurance companies are entitled to have their policy contracts enforced as written " *Taylor v. Aetna Life Ins. Co.*, 54 F.Supp.2d 1076(M.D.Ala. 1999) quoting *Gregory v. Western World Ins. Co.*, 481 So.2d 878, 881 (Ala.1985). They need not risk their terms to judicial interpretation or to strained constructions. *Id.* In other words, the provisions of an insurance policy must be given their ordinary, common meaning. *Id.* Citing *Taber v. Nationwide Mut. Ins. Co.,* 447 So.2d 698, 700 (Ala.1984) ( "It is the duty of the courts to take the words of an insurance policy as they are found in it, and as persons with usual and ordinary understanding would construe them when used to express the purpose for which they were employed" ) (quoting Green v. Merrill 308 So.2d 702, 704 (Ala.1975). The courts must give policy language "the meaning which would be attached by an ordinary person of average understanding if purchasing insurance. An insurance policy should be read as a layman would read it and not as it might be analyzed by an attorney or insurance expert." *Taylor v. Aetna,* 54 F.Supp.2d 1076, citing *Liggans R.V. Ctr. v. John Deere Ins. Co.,* 575 So.2d 567, 571 (Ala.1991) (quoting 13 Appleman, Insurance Law and Practice § 7384 (1976).

11

In *Jackson County Hospital v. Alabama Hospital Association Trust,* 652 So.2d 233 (Ala. 1994), a liability insurer brought a declaratory judgment action against its insured (Hospital), seeking a determination by the court that it was not required to defend or indemnify the insured in regards to a wrongful termination claim. The Circuit Court held that coverage for a wrongful termination claim was precluded under the policy exclusion for intentional acts from the definition of "occurrence". The insured appealed, and the Supreme Court held that a claim that the insured intentionally discharged an employee because of her filing of a workers' compensation claim fell within the insurance policy exclusion for intentional acts.

The word "intent" in an insurance policy provision indicates that the actor desires to cause the consequences of an act or believes that the consequences are likely to result from it. See *Appleman, Insurance Law and Practice,* § 4492.02 (Berdal ed. 1979). Many courts have determined that an employer's termination of an employee is intentional and is not covered under "occurrence" provisions in most insurance policies. See *St. Paul Mercury Ins. Co. v. Ralee Engineering Co.,* 804 F.2d 520, 522 (9th Cir.1986) (insurer not required to provide coverage for wrongful termination claim where policy covers only "something [the insured] didn't expect or intend to happen"); *E-Z Loader Boat Trailers, Inc. v. Travelers Indemnity Co.,* 106 Wash.2d 901, 906, 726 P.2d 439, 442 (1986) ("[t]ermination of an employee is not unintentional and does not result from a chance occurrence") *Jespersen v. United States Fidelity & Guar. Co.,* 131 N.H. 257, 551 A.2d 530 (1988); *Daly Ditches Irr. v. National Sur. Corp.,* 234 Mont. 537, 764 P.2d 1276 (1988); *Smithway Motor Xpress v. Liberty Mut. Ins. Co.,* 484 N.W.2d 192 (Iowa 1992).

Here, in the state court actions giving rise to the underlying state court litigation, Dennis Wilson alleged that G&S and KYM committed acts of wrongful termination and fraud. It is clear

and undisputed that, throughout the state court actions, Wilson contended that the actions of G&S and KYM were intentional.  The Supreme Court's decision in *Jackson County Hospital v. Hospital Association Trust* sets forth precedent that wrongful termination is an intentional act and does not qualify as an "occurrence".  The facts as presented in the underlying litigation clearly demonstrate that Dennis Wilson's claims resulted from G&S and KYM's intentional acts. Because these acts were intentional and done to harm, by their very nature the acts could not be accidents, and thus could not constitute "occurrences" as defined in the policies.  As such, there can be no doubt that the allegations complained of and the injuries suffered by Wilson at the hands of G&S and KYM are not covered by the subject insurance policies and Penn National, therefore, has no obligation to indemnify and defend G&S or KYM.

**2.      PENN NATIONAL HAS NO OBLIGATION TO DEFEND OR INDEMNIFY G&S OR KYM, AS   PENN NATIONAL HAD NO NOTICE OF THE UNDERLYING LAWSUIT PRIOR TO DEFAULT JUDGMENTS BEING ENTERED AGAINST THE INSUREDS**

The insurance policies under which Penn National insured G&S and KYM include the following provisions:

Form CG 00 01:        COMMERCIAL GENERAL LIABILITY COVERAGE FORM

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

2.       Duties In The Event of Occurrence, Offense, Claim or Suit
      a.        You must see to it that we are notified **as soon as practicable** of an "occurrence" or an offense which may result in a claim.
      b.        If a claim is made or "suit" is brought against any insured, you must:
            (1)       Immediately record the specifics of the claim or suit and the date received; and
            (2)       Notify us as soon as practicable.

13

You must see to it that we receive written notice of the claim or suit as soon as practicable.

    c.    You and any other involved insured must:

        (1)    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)    Authorize us to obtain records and other information;

        (3)    Cooperate with us in the investigation or settlement of the claim or defense against the "suit" and

        (4)    Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

In the instant case, Dennis Wilson obtained service upon G&S in the retaliatory discharge suit on or about September 28, 2000, and obtained a default judgment against said defendant on April 27, 2001, in the amount of $202,820, plus court costs. (See Amended Complaint and attachments). Wilson filed a separate Complaint against G&S for workman's compensation benefits on November 19, 2001. Said suit was properly served the defendant and Wilson obtained a default judgment against G&S on May 20, 2002, for damages in the amount of $11,970.44, plus costs. *Id.*. Notice of the pending lawsuits filed on behalf of Dennis Wilson was not given by G&S or KYM to Penn National, as required under the Commercial General Liability policies, and the insureds allowed default judgments to be entered against them without notice of the pending litigation being given to Penn National. (See Amended Complaint and attachments). Said actions by G&S and KYM violate the terms and conditions of the subject Commercial General Liability policies, thus voiding any coverages which may otherwise have been applicable to the claims asserted against them. (See Form CG 00 01)(See also Amended Complaint and attachments).

Alabama courts have held that an insurer is not contractually obligated to pay a default judgment entered against its insured when the insurer did not receive pre-judgment notice of the suit.

14

*Lemuel v. Admiral Ins. Co.*, 414 F.Supp.2d 1037, 1050 (M.D.Ala. 2006).  In *Lemuel*, the Administratrix of decedent's estate brought a state court action against the ambulance company's primary and excess insurers, alleging that the insurers were obligated to indemnify the ambulance company as to a default judgement in the underlying wrongful death lawsuit.  The District Court held that the ambulance company's delay in notifying its insurers was unreasonable as matter of law.

Pursuant to Alabama law, when an insurance policy requires notice "as soon as practicable" or "immediately," the insured is required to give notice "'within reasonable time' in view of all facts and circumstances of case," and insured's failure to do so releases insurer from providing coverage. *Id.* Citing *Southern Guar. Ins. Co. v. Thomas,* 334 So.2d 879, 882-83 (Ala. 1976).  The reasonableness of the delay is a question of fact for the jury "where facts are disputed or where conflicting inferences may reasonably be drawn from the evidence." *Thomas* at 882.  However, if the insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the court should find as a matter of law that there has been a breach of the notice provision of the policy. *Id.*

In the instant case, Penn National was not provided notice of Dennis Wilson's lawsuits until after suits had been filed and a default judgments was entered against G&S and KYM.  (See Amended Complaint and attachments).  Several years elapsed between the time that G&S was served and the time that Penn was finally notified of the lawsuits. Penn was finally notified of the default judgments against it only after default judgments were rendered against G&S in both suits and another lawsuit was filed by Wilson in an attempt to collect on those judgments. (See Amended Complaint and attachments). No excuse was provided by G&S or KYM for their extreme delay in notifying Penn National of the pending lawsuits filed by Wilson.  This lengthy delay in notification

by its insureds did not allow Penn National to participate and "control the litigation" in the previous lawsuits. The Court in *Webb v. Zurich*, 200 F.3d 759 (11 Cir. 2000), explained that the purpose of the notice provision in an insurance policy that the insured immediately forward legal process to the insurer is to afford the insurer an opportunity to control the litigation. Penn National never had that opportunity in this case.

Defendants may argue that its late notice should be forgiven because Penn National had ample opportunity to control the litigation even after default judgment was rendered. Even if Penn National could have filed a timely motion to set aside the default judgment, this argument is due to fail, as it focuses on whether Penn Nation suffered prejudice as a result of the late notification, rather than an issue of notice. When the delay is untimely and unexcused, as here, the inquiry is over. *Lemuel* at 1064. The presence or absence of prejudice is irrelevant to the determination of whether a policy between an insured and its primary carrier is vitiated. Regardless, prompt notice is required so that the insurer can gain "*early* control over litigation." *Id.* quoting *AXA Marine and Aviation* 84 F.3d 622 at 626 (2nd Cir. 1996)(emphasis added).

Defendants may also argue that Penn National has not been prejudiced by the default judgments in the former actions filed by Wilson because, as stated above, Penn National could conceivably challenge the default judgments and have them set aside. This is immaterial. In *Thomas*, the Supreme court of Alabama rejected the insured's argument that the absence of prejudice to the insurer from the delay is a material consideration. The court explained that pursuant to its precedent, "whether the insurer was prejudiced by the delay is immaterial to a determination of the reasonableness of the delay where the giving of reasonably timely notice is expressly made a condition precedent to any action against the insurer." 334 So.2d 879 (Ala. 1976).

16

In *Watts v. Preferred Risk Mutual Insurance Co.,* 423 So.2d 171 (Ala. 1982), an insured (Ware) failed to immediately forward legal process to the insurer as required by an automobile liability policy. The liability carrier, Preferred Risk, was not informed by its insured of a lawsuit filed by the other motorist involved in the accident (Watts). Ware failed to answer Plaintiff's complaint, and a default was entered against him. Ware never notified Preferred about the suit. The Alabama Supreme Court, affirming the trial court's summary judgment in favor of Preferred Risk, held that the insurance policy contained a standard provision which requires as a condition precedent to any action on the policy that the suit papers in any action against the insured be forwarded immediately to the company. Neither defendant forwarded any suit papers at any time to Preferred Risk. Preferred Risk had not been notified that suit had been filed until after damages had been proved and a default judgment entered. As such, summary judgment was correctly entered in favor of Preferred Risk. *Id.* at 173. Under Alabama law "a plaintiff cannot recover a damage award from an insurance company if there is a policy provision requiring that the insurance company receive notice of a lawsuit if the plaintiff and the insured fail to provide the insurer with adequate post-filing notice of the lawsuit." *Id.* at 761.

In the instant case, no notice was given to Penn National of any pending lawsuit until years after they were filed. Further, default judgments had been entered against Penn's insured prior to Penn's receiving notice. This notice failure expressly violates the subject insurance policy under which Penn National is currently defending G&S and KYM. Under the law of the State of Alabama, when an insurance policy contains a condition precedent to coverage that the insured provide prompt notice of a claim or suit, the insured must comply with that condition in a timely manner. Absent a valid reason for the untimely delay, the notice is deemed unreasonable, and the determination may

be rendered by the court as a matter of law where the facts surrounding the delay are undisputed. *Lemuel v. Admiral Insurance Co.* 404 F.Supp.2d 1037 (M.D.Ala. 2006). Accordingly, Wilson's present litigation seeking to recover said default judgments against either G&S or KYM are not covered and summary judgment should be granted in favor of Plaintiff, Penn National.

## CONCLUSION

It is undisputed that Penn National issued insurance policies covering G&S and KYM. It is also undisputed that those policies were in effect at the time that Dennis Wilson was allegedly injured and wrongfully terminated. These policies were still in effect when Wilson filed suit against G&S regarding wrongful termination and workers compensation benefits. Further, these policies were in effect when Wilson obtained default judgments against G&S and when he filed the underlying state court action against G&S and KYM in seeking to enforce these judgments. Under the policies, Penn National has no duty to defend or indemnify G&S and KYM. Express notice provisions and coverage exclusions in the policies preclude Penn National from covering any party to the underlying state action. Alabama law has consistently held that any one of these myriad violations would release Penn National from any obligations owed to G&S, KYM or Dennis Wilson as a result of the previously discussed state court actions. Accordingly, there is no issue in this action of material fact and Penn National is entitled to summary judgment as a matter of law in its favor.

Respectfully submitted,

s/ Bert P. Taylor

_____

Bert P. Taylor (ASB 4006-L75B)

18

**OF COUNSEL FOR PLAINTIFF:**
**PENNSYLVANIA MUTUAL**
**CASUALTY INSURANCE COMPANY**
TAYLOR RITTER, P.C.
P.O. Box 489
Orange Beach, AL 36561
Phone: 251-981-8430
Fax: 251-981-8425

## CERTIFICATE OF SERVICE

I hereby certify that I have served a true and correct copy of the above pleading on all counsel listed below via electronic filing on this the **26**[th] day of **May, 2006:**

For Defendant Dennis Wilson:

Joseph A. Morris, Esquire
Morris Cary Andrews Talmadge Jones & Driggars, LLC
P. O. Box 1649
3334 Ross Clark Circle
Dothan, AL 36302-1649
(334) 792-1420
Fax: (334) 673-0077
jamorris@mcatlaw.com

For Defendant KYM Industries, Inc.:

Richard H. Ramsey, III, Esquire
Ramsey Court
400 W. Adams Street, Ste. 1
Dothan, AL 36303
(334) 794-4154
Fax: (334) 794-2841
ramseycourt@aol.com

s/ Bert P. Taylor

_____
Of Counsel

19