IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PENNSYLVANIA NATIONAL ) | |
| MUTUAL CAS. INS. CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.  1:05cv951-CSC |
| ) | (WO) |
| KYM INDUSTRIES, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This case involves a dispute between plaintiff Pennsylvania National Mutual Casualty Insurance Company ("Penn National") and defendants KYM Industries, Inc. ("KYM") and Dennis Wilson ("Wilson").[1]  Penn National asserts that it is under no duty to indemnify, defend or pay insurance proceeds to KYM in connection with a lawsuit filed by Wilson in state court.  Penn National requests that this court enter a judgment declaring "what, if any, duties Penn National has to defend, indemnify or pay any judgment under the subject liability policies which may be rendered against G&S Custom Covers, Inc. or KYM Industries, Inc. in the underlying lawsuit."  *See* Compl. at 7.  Penn National also requests other equitable relief.

The court has jurisdiction of this 28 U.S.C. § 2201 Declaratory Judgment Act case

---

[1] The other defendant, G&S Custom Covers, Inc. ("G&S"), was never properly served, *see* FED. R. CIV. P . 4(h)(1), and thus, is not a party to this action.

pursuant to 28 U.S.C. § 1332. The parties have consented to a United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment, pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. Now pending before the court is the plaintiff's motion for summary judgment and the defendants' response to the motion. For the reasons that follow, the court concludes that the plaintiff's motion for summary judgment should be granted.

## II. SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[2] In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the court stated:

> "[Where the nonmoving party will bear the burden of proof at trial on a dispositive issue...Rule 56(e)...requires the nonmoving party to go beyond the pleadings and by...affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial. . . .We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment...Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) except the mere pleadings themselves. . . .

*Id.* at 324.

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323.

The movant may meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-324. If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also* FED. R. CIV. P. 56(e). ("When a motion for summary judgment is made and supported ... an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response ... must set forth specific facts showing that there is a genuine issue for trial."). What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).

A dispute of material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the non-movant must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. If the

non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n. 6 (11th Cir. 1997); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995).

However, if there is a conflict in the evidence, "the [plaintiff's] evidence is to be believed and all reasonable inferences must be drawn in his favor." *Anderson*, 477 U.S. at 255; *Molina v. Merritt & Furman Ins. Agency*, 207 F.3d 1351, 1356 (11th Cir. 2000). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law  FED. R. CIV. P. 56(c). With these principles of law in mind, the court will determine now whether summary judgment is appropriate and should be granted.

### III.  FACTS

On November 23, 1999, Penn National issued G&S Custom Covers, Inc. ("G&S") a Commercial General Liability Occurrence Policy, policy number CL9 0082936. The policy covered G&S from November 23, 1999 to November 23, 2000.[3] (Compl., Ex. 1). Section I(A) of the policy provides coverage for bodily injury and property damage liability while Section I(B) contains the policy's exclusions. (*Id.*)

The Insuring Agreement provides as follows:

---

[3] The policy was renewed for the periods of November 23, 2000 to November 23, 2001; November 23, 2001 to November 23, 2002; November 23, 2002 to November 23, 2003; November 23, 2003 to November 23, 2004; and November 23, 2004 to November 23, 2005.

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

(*Id*.)

The policy also contains specific exclusions.

**2.   Exclusions**

This insurance does not apply to:

a.  **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

.   .   .

d.  **Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

e.  **Employer's Liability**

"Bodily injury" to:

(1)   An "employee" of the insured arising out of and in the course of:

(a)   Employment by the insured; or

5

>   (b)   Performing duties related to the conduct of
>         the insured's business; . . .

(*Id*.)

Finally, the policy contained an Employment-Related Practices Exclusion which excluded coverage for "bodily injury" as a result of the termination of a person's employment. (*Id*.)

On November 18, 1999, while an employee of G&S, Wilson suffered an on-the-job injury. He filed a workers compensation claim against G&S, and, on December 20, 1999, was terminated by G&S. The commercial liability policy issued by Penn National to G&S was in effect on the date Wilson was terminated. Sometime soon thereafter, KYM took over operations of G&S.

On February 28, 2000, the name of the insured on the policy was changed from G&S to KYM Industries, Inc. ("KYM"). (Compl., Ex. B).

On June 7, 2000, Wilson filed suit against G&S in state court alleging retaliatory discharge. On April 27, 2001, Wilson obtained a default judgment against G&S in the amount of $202,820.00. Court costs were also assessed in the amount of $200.00.

On November 19, 2001, Wilson filed a second, separate complaint against G&S seeking workers compensation benefits. On May 30, 2002, Wilson obtained a default judgment on his workers compensation benefits claim against G&S in the amount of $11,970.44. Court costs against G&S were also assessed in the amount of $149.00.

On December 10, 2004, defendant Wilson filed a third action against G&S in the

Circuit Court of Houston County, Alabama. In his complaint, Wilson also names KYM as a defendant and alleges that G&S intentionally and constructively fraudulently transferred its assets to KYM for the purpose of hindering or defrauding his ability to collect the default judgments entered against G&S. Wilson also seeks to pierce KYM's corporate veil to collect on the judgments previously entered against G&S.

Penn National is providing G&S and KYM a defense subject to a full reservation of its rights to deny coverage. Penn National filed this declaratory judgment action on October 17, 2005 seeking a declaration about whether it has a duty to continue to defend and/or indemnify G&S or KYM for any judgment that may be rendered against them in the underlying state court action.

## IV. DISCUSSION

The crux of the matter before the court is whether Penn National is obligated to defend or indemnify KYM in any of the underlying state court actions. Although there is only one pending lawsuit in state court, Penn National seeks a declaration that its policies do not cover any of the lawsuits filed by Wilson against KYM and G&S, including the two lawsuits in which default judgments were entered against G&S. Because the default judgments Wilson obtained in those cases form the basis of Wilson's claim for damages against KYM and G&S, the court will address the issue in the way it is framed by Penn National.

**A. Defendants' Response in Opposition to Summary Judgment**. In response to

the plaintiff's motion for summary judgment, the defendants have failed to state with any coherent degree of specificity why the motion should be denied. The defendants' argument in opposition to the motion for summary judgment, in its entirety, is as follows:

### **ARGUMENT**

The Plaintiff correctly states that the coverage provided by it's policy would pay such claims that the insured became legally obligated to pay for "bodily injury" or "property damage"; and acknowledges that they would be liable to body injury or property damage if same took place in the cover territory and during the policy period. Plaintiff's reference to bodily injury does not apply to the State Court Complaint that it is merely seeking damages to be awarded by a jury if it included liability on the Defendant's part.

Plaintiff concedes that in the instant case there is no dispute that the policy was in affect (sic) at the time of the actions at issue, nor that KYM was insured under the policy. There are no facts or allegations contending that any act of KYM arose against Wilson, in that he was never an employee of KYM. To the contrary, Plaintiff acknowledges that all actions are immediately germane to Wilson's former employment with G&S. In as much Wilson was never employed by KYM, this should have no relevancy of the responsibility of Plaintiff to defend KYM.

### **CONCLUSION**

Plaintiff concedes that it is undisputed that Penn National issued insurance policies covering KYM. It is also undisputed that their policies were in affect (sic) at the time of injury to Wilson, who was never employed by KYM. Therefore, under these policies, Penn National does in fact have a duty or obligation to defend or indemnify KYM. Plaintiff makes bold statements that it has no obligation to G&S, which might or might not be correct. However, Wilson never having been an employee of KYM, there is in fact a genuine issue as to the liability of KYM in the present state action.

(Defs' Res. to Pl's Mot. for Summ. J. at 2).

The court could summarily grant the plaintiff's motion for summary judgment because

the defendants' response does not refer the court to any evidence or legal authority in opposition to the motion for summary judgment, nor do they submit any affirmative evidence demonstrating that there exists genuine issues of material fact. Unfortunately for the defendants, it is not the court's function to distill every generality into a cogent, adversarial argument. The onus is on the party opposing summary judgment to submit affirmative evidence demonstrating that there exists a genuine issue of material fact regarding an essential element of the claim. *Celotex,* 477 U.S. at 322. The plaintiff must go beyond the pleadings and "designate 'specific facts' showing that there is a genuine issue for trial." *Id*. at 324. *See also Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment."). The court replicated the defendants' entire argument in response to the plaintiff's motion for summary judgment to demonstrate that the defendants have failed to state with any coherent degree of specificity why the motion should be denied. However, out of an abundance of caution, the court will address two of Penn National's specific arguments in support of its motion for summary judgment.[4]

**B. Occurrence requirement**. Now pending in state court is Wilson's third lawsuit filed against G&S, and the first lawsuit in which KYM is named as a defendant. Wilson alleges that KYM is the successor entity of G&S and that KYM and G&S intentionally and

---

[4] The court pretermits discussion of Penn National's other arguments because the court concludes that Penn National is entitled to judgment as a matter of law.

constructively fraudulently transferred G&S's assets to KYM to "escape liability for Plaintiff's claims" and to prevent Wilson from collecting on the judgments against G&S. Finally, Wilson seeks to pierce the corporate veil to recover the default judgments against G&S.

There is no dispute that the policy at issue was in effect at the time Wilson was terminated from his employment with G&S, allegedly for filing a claim for worker compensation benefits. It is further undisputed that the original policy was issued to G&S but that in February 2000, only the name of the policy holder was changed from G&S to KYM. Finally, the parties do not dispute the substance of the policy. Rather, the dispute in this case centers on whether specific provisions contained in the policy require Penn National to defend and/or indemnify KYM in the action filed by Wilson.

Penn National argues that KYM is entitled to no coverage under the policy because Wilson's claims do not constitute occurrences within the meaning of the policy. KYM and Wilson assert that there are genuine issues of material fact about whether Wilson was an employee of KYM that preclude granting summary judgment. Wilson's employment status with KYM is immaterial to resolution of Penn National's motion for summary judgment which is premised on there being no occurrence under the policy.[5]

Penn National's insurance policy provides that it "will pay those sums that the insured

---

[5] Of course, if Wilson was an employee of KYM, his claims are excluded from coverage under the policy as they arise out of his employment. (*See* Ex 1, Exclusions, Section 2(d), 2(e), and Employment-Related Practices Exclusion.)

becomes legally obligated to pay as damages because of "bodily injury" or "property damages" to which this insurance applies." (Compl. Ex. 1, Section 1(a)). The policy further provides that "this insurance applies to "bodily injury" and "property damages" only if: (1) [t]he "bodily injury" or "property damages" is caused by an "occurrence" that takes place in the "coverage territory;" and (2) [t]he "bodily injury" or "property damages" occurs during the policy period."[6] (*Id*. at ¶1.b.).

KYM has failed to demonstrate that a genuine issue of material fact exists about whether Wilson's claims constitute occurrences under the policy. "Under Alabama law the general rule is that the insured bears the burden of proving coverage." *Jordan v. National Accident. Ins. Underwriters, Inc.*, 922 F.2d 732, 735 (11th Cir. 1991); *Colonial Life and Accident Ins. Co. v. Collins*, 194 So.2d 532, 535 (1967). The policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Pl's Ex. 1 at Section V, ¶ 12, p. 12.) However, the policy does not define the term "accident." Consequently, "[t]he language in an insurance policy should be given the same meaning that a person of ordinary intelligence would reasonably give it." *Western World Ins. Co. v. City of Tuscumbia*, 612 So.2d 1159, 1161 (Ala. 1992). The burden is on KYM as the insured to demonstrate that coverage under the policy exists. *See Jordan, supra*. In the first two state court cases Wilson contended that he was discharged in

---

[6] The policies define "bodily injury" as "bodily injury, sickness, or disease sustained by a person, including mental anguish, or death resulting from any of these." (Ex. 1 at II.)

retaliation for exercising his worker's compensation rights. Plainly, under Alabama law retaliatory termination of an employee is not an "accident" within the meaning of this policy. *Jackson County Hosp. v. Alabama Hosp. Ass'n Trust*, 652 So.2d 233 (Ala. 1994). Obviously, the second lawsuit is not an occurrence within the meaning of the policy because it related solely to a claim for worker's compensation benefits. The defendants come forward with no facts and make no argument in response to the plaintiff's argument that Wilson's claims do not constitute occurrences under the policy. They do not provide the court with any evidence, nor does their brief point the court to any legal authority to counter the plaintiff's contentions.

In the same way, the third lawsuit is premised on claims of intentional acts. The defendants do not contend otherwise. Consequently, the court concludes that the defendants have failed to demonstrate that there exists a genuine issue of material fact about whether KYM's acts constitute occurrences under Penn National's policy. Accordingly, the court concludes that Penn National's policy does not provide KYM any coverage for Wilson's claims in the state court cases. The plaintiff is entitled to summary judgment on this basis.

**C. Intentional act exclusion.** The court will not truncate its analysis at this point, however, because even if KYM's acts constitute occurrences within the meaning of the policy, Penn National still has no duty to defendant or indemnify KYM because the policy contains a specific intentional act exclusion. "This insurance does not apply to . . . "[b]odily

injury" or "property damage" expected or intended from the standpoint of the insured." (Pl's Ex. 1 at at ¶ 2.a). It is clear and undisputed that in the pending state court action Wilson contends that KYM's actions were intentional and fraudulent. The facts as presented in the third state complaint clearly demonstrate that Wilson's claims against KYM arise from KYM's intentional acts to defraud Wilson and prevent him from recovering on the default judgments entered against G&S. At the very least, it is undisputed that Penn National presented evidence that KYM's actions were intentional.

The defendants have presented no evidence to demonstrate that there exists genuine issues of material fact regarding the intentional nature of KYM's acts. KYM does not contend that the intentional act exclusion does not apply. It points the court to no facts or law that would suggest that the intentional act exclusion should not apply. The defendants do not dispute that Wilson's damages were the expected and intended result of KYM and G&S's actions. Consequently, the court concludes that even if KYM's acts constituted occurrences within the meaning of the policy, the intentional act exclusion applies and Penn National's policy provides KYM no coverage for Wilson's claims.[7] Penn National has no duty to defend or indemnify KYM in the pending state court litigation.

**D. Piercing the corporate veil claim in the pending state court action and default judgments in the two other state court cases**. Penn National also asserts that KYM is not

---

[7] Because the court concludes that KYM's acts were intentional, by their very nature the acts could not be accidents, and thus, for this reason, also do not constitute occurrences as defined in the policy.

entitled to a defense or indemnification on Wilson's claim to pierce the corporate veil in the third state court case or recover on the default judgments entered against G&S in two earlier state court cases because the claims in those actions arise out of Wilson's employment and/or worker's compensation claims.

In 1999, while an employee of G&S, Wilson suffered an on-the-job injury. He filed a workers compensation claim against G&S, and was subsequently terminated by G&S. In 2001, Wilson obtained a default judgment against G&S in state court on his retaliatory discharge claim. In 2002, Wilson obtained a second default judgment against G&S in state court on his workers compensation benefits claim. In his third state court case, Wilson seeks to pierce KYM's corporate veil to recover on these default judgments.

It is undisputed that the genesis of Wilson's claims that resulted in the default judgments being entered against G&S was his employment with G&S. Wilson obtained default judgments on his workers compensation benefits claim as well as his retaliatory discharge claim – Wilson alleged that he was terminated by G&S for filing for workers compensation benefits after suffering an on-the-job injury. Penn National's policy clearly excludes coverage for any claims arising from workers compensation laws or "[e]mployment by the insured." *See* Ex 1, Exclusions, Section 2(d) and 2(e). The policy also contains an Employment-Related Practices Exclusion which excluded coverage for "bodily injury" as a result of the termination of a person's employment. *See Id.,* Employment-Related Practices Exclusion. Consequently, neither G&S nor KYM were entitled to a defense or

14

indemnification in either state court case in which the default judgments were obtained.[8]

It follows, therefore, that KYM cannot now claim the benefit of coverage on the claim to pierce the corporate veil if it was not entitled to coverage on the claims that resulted in the default judgments. Stated another way, if there is no coverage for the underlying claims that resulted in default judgments, there is still no coverage even if the corporate veil is pierced. Accordingly, the court concludes that Penn National has no duty to defend or indemnify KYM on this claim

A separate final judgment will be entered.

Done this 21st day of August, 2006.

    /s/Charles S. Coody
CHARLES S. COODY
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[8] The court also notes that it is undisputed that neither G&S nor KYM notified Penn National of Wilson's two lawsuits. Consequently, neither company can claim the benefits of the insurance policy because both companies failed to give timely notice of the underlying litigations that resulted in default judgments being entered.